UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Z PRODUCTIONS, INC., a Florida
corporation, d/b/a GLOBAL INTERNET
CORPORATION, a/k/a THE
CAMGUYS.COM,

       Plaintiff,

v.                                                Case No.: 8:10-CV-966-T-23MAP

SNR PRODUCTIONS, INC., a New York
corporation,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff, Z Productions, Inc., the developer of a website, TheCamGuys.com, that allows users to view live webcasts and to engage in video communications and chats with male models, alleges that the Defendant, SNR Productions, Inc. operates domain names, CamGuys.net, CamGuys.tv, and CamGuys.info, that infringe on Z Productions' registered trademark. At this juncture, SNR moves for summary judgment, pursuant to Fed.R.Civ.P. 56, asserting Z Productions does not possess any protectable rights in its mark, "The Cam Guys," or in the similar term "cam guys" due to SNR's prior use of the term (doc. 33). After consideration, I recommend that SNR's motion be granted as to Z Productions' counts I (unfair competition under 15 U.S.C.§ 1125(a)), II (dilution under Fla. Stat. § 495.151), III (unfair competition under Fla. Stat. §501.291 *et seq.*, IV (unfair competition under Florida common law), and VI (cybersquatting under 15 U.S.C. § 1125(a))[1] and as to counterclaims I (cancellation) and II

---

[1] The Complaint does not include a Count V.


(declaratory relief), and be denied as to SNR's counterclaims III and IV (tortious interference) for the reasons set forth below.[2]

### A. Standard of Review

Summary judgment is appropriate when 'there is no genuine dispute as to any material fact' and the moving party is entitled to judgment as a matter of law. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotations and citation omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (quotations and citation omitted). In considering the motion for summary judgment, the Court considers the evidence and draws "all reasonable inferences in the light most favorable to the non-moving party. *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002) (citation omitted). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380.

### B. Factual backdrop

On February 14, 2000, Z Productions was incorporated and registered with the Florida Department of State and within a few days thereafter began conducting business via the website

---

[2] The district judge referred SNR's motion for summary judgment to me for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b). *See* doc. 40.

allamericanguys.com. Through allamericanguys.com, Z Productions offered online viewing of and chatting with male models. From on or about April 2002 through November 2004, Stephen Ranieri, who later became SNR's president and owner, provided services to Z Productions' allamericanguys.com website, including moderating a live chat room and providing technical assistance.[3] On November 6, 2005, Z Productions began operating another website thecamguys.com, for the purpose of providing online viewing and chatting with male models. On its registration application filed with the United States Patent and Trademark Office ("USPTO"), Z Productions asserts that it first used the term "The Cam Guys" in November 2005 in connection with its thecamguys,.com website. Z Productions filed its application bearing serial number 7757891 for registration of the mark "The Cam Guys" on June 11, 2009, and provided on the application that it first used the mark at least as early as November 6, 2005, and that "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/ services of such other person, to cause confusion, or to cause mistake, or to deceive ..." *See* doc. 36-3. The USPTO registered the mark "The Cam Guys" to Z Productions on January 12, 2010.

    Z Productions' vice-president Christopher Wescott has given inconsistent versions regarding when Z Productions began using "The Cam Guys." In his deposition, he said he chose the name "The Cam Guys" "because [he] thought it was something that would be able to be marketed well," because "it references the superlative nature of our web cam models," and that

---

  [3] Z Productions originally named Ranieri as a defendant in this action, but this Court granted Ranieri's motion to dismiss for lack of personal jurisdiction. *See* order, doc. 31 adopting report and recommendation, doc. 28.

from the name "people would know that we are the cam guys." He also stated that he invented the term "The Cam Guys" and that he had not heard the term "cam guys" before he started thecamguys.com. *See* Wescott deposition, doc. 33-12. However, in his affidavit in opposition to the motion for summary judgment,Wescott,contradicts that testimony. Instead, he attests that Z Productions began using the term "The Cam Guys" about four and a half years before it filed its application for "The Cam Guys" trademark. *See* Wescott affidavit, doc. 36-1. Similarly, Z Productions' president and technical administrator, Miguel Downs, testified that he was not aware that SNR's website guyswithcams.com used the term "cam guy" or "cam guys" to reference its models and does not recall seeing the terms used by anyone before 2005.[4] *See* Downs deposition, doc. 33-2.

SNR was incorporated in New York on June 15, 2006. However, SNR began operating as a business in 2001, as evidenced by the filing of a Certificate of Individual Doing Business Under Assumed Name by Stephen Ranieri, the president of SNR, with the clerk's office of Monroe County, New York on September 9, 2003. This certificate indicates that Ranieri was transacting business under the name "SNR Productions." *See* doc. 45, ex. A. SNR maintains that it acquired the common law rights in the mark "cam guy" and "cam guys" when Ranieri d/b/a SNR Productions transferred business operations to SNR at the time of its incorporation.

---

[4] Interestingly, SNR fiercely maintains that in fact Z Productions, via Downs was aware of its use of the term "cam guys" on its website guyswithcams.com. SNR explains that Downs posted messages on SNR's guyswithcams.com message board in November 2002, and that the message board depicts SNR's repeated use of the term "cam guys" in connection with its services. Second, in 2002 or 2003, Z Productions maintained banner advertisements on SNR's guyswithcams.com website on the same pages on which SNR used the term "cam guys." Third, SNR maintains that in 2003, Z Productions sponsored a contest held by SNR in which SNR's customers voted on candidates to become its next "cam guy" and Z Productions offered a photo shoot to the winner. *See* doc. 33, p.23.

Ranieri testified that SNR first used the term "cam guys" on or before September 2002, on a website he operated, guyswithcams.com that offered live webcam chat services, and has continuously used the term "cam guys" in connection with its live webcam chat services since 2002. Exhibits filed in support of the summary judgment motion show archived "snapshots" of the guyswithcams.com website evidencing SNR's use of the term "cam guy" and "cam guys" in 2003. *See* exhibits 6-7 to Ranieri deposition, doc. 37. From 2003-2005, SNR produced a series of DVDs entitled "Cam Guys Gone Wild," a title he chose to use because he often used the term "cam guys" throughout their website and "thought it would be a catchy name," which was sold via the guyswithcams.com website featuring its "cam guys" on spring break trips. Through these activities, Ranieri asserts that he, d/b/a SNR, used the term "cam guys" in connection with the sale to the consuming public predating Z Production's first use of the term "cam guys" and its registration of the "The Cam Guys" mark. *See* Ranieri deposition, doc. 37-1; *see also* Ranieri affidavit, doc. 33-6 (attesting that SNR has continuously used the descriptive terms "cam guy" and "cam guys" in connection with the offering of its live web cam internet services since, at least, November, 2002).

Ranieri testified that SNR did not invent the term "cam guys," and that he was aware that others in the male model industry used the term "cam guys" before he used it. SNR's website, like Z Productions' website, promotes "cam guy" chat services, invites customers to chat with its "cam guys," and recruits models to work as "cam guys" on its website, and runs a periodic feature highlighting a particular male model as its "cover cam guy." SNR first became aware of Z Productions' website TheCamGuys.com on or about May 1, 2006. SNR acquired the three domain names that are the subject of this lawsuit, camguys.net, camguys.info, and camguys.tv, as

part of a bundled package offered by GoDaddy.com and registered the domain names camguys.net, camguys.info, and camguys.tv in August 2007, prior to Z Productions' federal registration application. SNR uses the camguys.net website to offer blog services and to direct web traffic to its other websites using hyperlinked text and references to its other websites.  SNR uses camguys.info and camguys.tv as automatic redirects to its website camwithhim.com.

Z Productions filed the instant five-count complaint against SNR alleging unfair and deceptive trade practices (in violation of 15 U.S.C. § 1125(a) (count I), dilution under Fla. Stat. § 495.151 (count II), unfair competition under Florida Deceptive and Unfair Trade Practices Act (count III), unfair competition under Florida common law (count IV), and cybersquatting under 15 U.S.C. §1125(d) (count VI).  Z Productions theorizes it has acquired an ownership interest in the name "TheCamGuys" in connection with live webcasting through its prior use of such name, and that SNR's statements, internet representations, and action create a likelihood of confusion among consumers of live, male model webcasting.  Z Productions alleges that consumers are likely to believe that Z Productions and/or TheCamGuys.com sponsor or are affiliated with, condone, or have an ownership interest in, or are associated in some manner with SNR's websites, CamGuys.net, CamGuys.tv, and CamGuys.info.  Moreover, Z Productions alleges that SNR's representations on its websites are clearly intentional and calculated to deceive consumers, and that SNR's representations on their websites were designed to capitalize on and profit from the goodwill and reputation of the "CamGuys" and related names and services in the industry.  Z Productions further alleges that SNR's use constitutes unfair competition, and is intentionally fraudulent, malicious,willful and/or wanton (Complaint, ¶¶ 26-28), that SNR's use of the names CamGuys.net, CamGuys.tv, and CamGuys.info and related names and services is

likely to suggest a false sponsorship, license or association with Z Productions' website, TheCamGuys.com, which will cause injury to Z Productions and the public. Further, Z Productions alleges that to the extent that SNR's use of the names CamGuys.net, CamGuys.tv, and CamGuys.info or related "cam" terminology in connection with webcasting and modeling is inferior in quality to Z Productions' interactive webcasting services, such conduct and/or distribution to a customer will cause further injury to Z Productions and the public (Complaint, ¶ 29-30).

According to the parties' joint pretrial statement, Z Productions has dropped its claim for money damages, and seeks only injunctive relief against SNR. *See* doc. 49, p.2. Via counterclaims, SNR seeks cancellation of Z Productions' mark (counterclaim I), a declaratory judgment stating that its use of the domain names at issue does not constitute trademark infringement (counterclaim II), and compensatory and punitive damages in connection with tortious interference claims arising from Z Productions' interference with SNR's webhost providers (counterclaims III and IV).

    *C. Discussion*

        *1. Count I- Federal Unfair Competition under 15 U.S.C. § 1125(a)*

Z Productions alleges SNR's actions constitute unfair competition, false designation of origin, false or misleading descriptions or representations of fact, false advertising/ promotion and/or unfair or deceptive trade practices in violation of 15 U.S.C. §1125(a). To prevail, Z Productions must show that 1) it has valid ownership of the mark or name; and 2) that the defendant has adopted an identical or similar mark such that consumers were likely to confuse

the two.[5] *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1216 (11th Cir. 2000). SNR disputes that Z Productions has valid ownership in the mark "The Cam Guys." Specifically, SNR asserts that it "it is undisputed that SNR's use of the term "cam guys" in connection with live webcam chat services predates Z Productions' use." *See* doc. 33, p. 10. Z Productions contents otherwise:

> Since Z Productions first used the phrase "The Cam Guys" in commerce in early November, 2005 (Ex. 3, Aff. Wescott) and since SNR did not exist until June 15, 2006, Z Productions has prior first use of the phrase. All of SNR's purported pre-June 15, 2006 conduct should be suspect, if not irrelevant. At a minimum, there is a dispute of material fact concerning which Party had prior first use.

doc. 39, p.14.

To succeed, Z Productions must show that it had a valid trademark which predates SNR's use of the mark. *Leigh, supra,* 212 F.3d at 1216-17. Registration does not actually confer rights in a mark. Instead, trademark ownership accrues with use. *Bauer Lamp Co. v. Shaffer,* 941 F.2d 1165, 1171 (11th Cir. 1991). Trademark registration confers only procedural advantages, and does not enlarge the registrant's ownership rights. Registration creates a *prima facie* rebuttable presumption that the one registering the mark is its owner, and that the trademark is valid; the burden of production shifts to the alleged infringer. *Thoroughbred Legends, LLC v. The Walt Disney Co.,* 2008 WL 616253 (N.D. Ga. 2008) citing *Persha v. Armour & Co.,* 239 F.2d 628, 630 (5th Cir. 1957).[6]

---

[5] The Eleventh Circuit views a "false designation of origin and false descriptions" claim under 15 U.S.C. § 1125(a) as essentially the same thing as "unfair competition" under the same section. *Knights Armament Co. v. Optical Systems Tech., Inc.,* 568 F.Supp. 2d 1369, 1376 (M.D. Fla. 2008) citing *Custom Mfg. & Eng'g v. Midway Svcs., Inc.,* 508 F.3d 641, 647-48 (11th Cir. 2007).

[6] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

The summary judgment record shows that SNR used the mark "cam guys" in commerce in 2003 on its website guyswithcams.com. *See* exhibits 6-7 to Ranieri deposition, doc. 37. I find Z Productions' argument that SNR could not have used the mark prior to its date of incorporation unpersuasive. As SNR asserts in its reply brief, when Ranieri d/b/a SNR Productions transferred business operations to SNR upon its incorporation, SNR acquired all of the trade names, service marks, and good will associated it. *See First Fashion USA, Inc. v. Best Hair Replacement Mfrs., Inc.,* 645 F.Supp. 2d 1158, 1164 (S.D. Fla. 2009) ("Unless there is evidence to the contrary, a trade name will be presumed to have passed, even in absence of formal assignment, to one to whom the business has been transferred."). Moreover, as SNR notes, the assignee of a trade name or service mark steps into the shoes of the assignor. *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1192 n.1 (11th Cir. 2001). This includes the rights associated with the assignor's first use and superior priority. *Planetary Motion, Inc. v. Techsplosion, Inc.,* 2000 WL 34015863, *3 (S.D. Fla. 2000); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 931 (4th Cir. 1995) (holding that assignment of a mark also transfers date of first use of the term to establish senior ownership). To overcome SNR's summary judgment motion, Z Productions must show it used the "cam guys" mark in commerce prior to 2003. Wescott testified on Z Productions' behalf that he chose the name "the cam guys" and had not heard the term before he started thecamguys,com on November 6, 2005 (*see* Wescott deposition, doc. 33-12). Wescott later attested in his affidavit in opposition to the motion for summary judgment that "Z Productions began using the website thecamguys.com for the purpose of online viewing of and chatting with male models, and that "[s]ince November 6, 2005, Z Productions has continuously used the phrase "The Cam Guys" to refer to itself, its website, its

brand." Wescott attested in the same affidavit that "[a]t the time Z Productions filed its application for "The Cam Guys" trademark, Z Productions had been using "The Cam Guys" for about 4 ½ years ..." *See* Wescott affidavit, doc. 36-1. This brief, conclusory assertion of trademark usage is unpersuasive. "This court has consistently held that conclusory allegations without specific supporting facts have no probative value." *See Leigh, supra,* 212 F.3d at 1217 quoting *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985). "One who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." *Id.* quoting *Gossett v. Du-Ra-Kel-Corp.,* 569 F.2d 869, 872 (5th Cir. 1978); Fed.R.Civ.P. 56(e). Z Productions has the burden of proving that it had trademark rights in the term "cam guys" first before SNR's use of the term on its website in 2003. Z Productions has not met its burden, as it has not provided any "specific facts" supporting prior use sufficient to create a genuine issue for trial.

Z Productions' claims that the word "The" in its mark changes the meaning and is critical to its mark, differentiating it from the simple term "cam guys." I find Z Productions' assertion that the word "The" is critical to the meaning of its mark "The Cam Guys" unpersuasive. *See Atlanta Allergy and Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta,* 685 F.Supp. 2d 1360, 1378 (N.D. Ga. 2010) citing *John Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983) (similarity is determined by considering the overall impression created by the mark[s] as a whole rather than simply comparing individual features of the marks).

Because I find that Z Productions lacks valid ownership of the mark, it is unnecessary for me to advance to the second element, that SNR's unauthorized use of the mark or name in commerce creates a likelihood of confusion among consumers as to the origin of the goods or

services.

### 2. Count II- Dilution under Fla. Stat. § 495.151

Via Count II, Z Productions claims that it is the rightful owner of the trademark "The Cam Guys" in connection with webcasting live models and that SNR has willfully or maliciously engaged in mark dilution causing damages. To prevail on a claim under Fla. Stat. §495.151, a plaintiff must demonstrate: 1) the plaintiff's mark is famous; 2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; 3) the defendant's use was commercial and in commerce; and 4) the defendant's use of the plaintiff's mark has likely caused dilution." *RainBird Corp. v. Taylor,* 665 F.Supp. 2d 1258 (N.D. Fla. 2009) citing *Great Southern Bank v. First Southern Bank,* 625 So. 2d 463, 471 (Fla. 1993). Because I already have found that SNR first used the term "cam guys," I cannot find that SNR diluted Z Productions' mark.

### 3. Count III- Unfair competition under Fla. Stat. § 501.201, et seq.

Via Count III, Z Productions alleges that SNR's willful conduct constitutes unfair competition and deceptive or unfair trade practices in the conduct of trade or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*. To prevail, Z Productions must prove: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Both parties concede that since the parties are competitors, Z Productions is limited to injunctive relief. *Ohio Savings Bank v. Kempa,* 2008 WL 276045, *3 (M.D. Fla. 2008). Both parties also agree that a cause of action alleging a violation of FDUTPA arising from a trademark infringement claim requires proof that the plaintiff's mark has priority, that the competitor used the mark in commerce, and that the competitor's use of the mark is likely to cause consumer confusion.

*Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.,* 510 F.Supp. 2d 1110, 1114 (S.D. Fla. 2007). Again, because I find that SNR first used the term "cam guys" in commerce, I find that Z Productions cannot prove a cause of action for FDUTPA violations.

### 4. *Count IV- Unfair Competition under Florida common law*

Via count IV, Z Productions alleges that SNR's acts constitute unfair competition in violation of Z Productions' superior rights under Florida common law. The parties concur that the applicable law is the same under Florida common law as under the federal claims under 15 U.S.C. § 1125(a). *See Tally-Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1026 (11th Cir. 1989). Accordingly, I recommend that SNR's motion for summary judgment be granted as to Count IV for the reasons stated above.

### 5. *Count VI- Cybersquatting under Lanham Act, 15 U.S.C. §1125(d)*

Congress enacted the Anticybersquatting Consumer Practices Act, 15 U.S.C. §1125(d), in 1999. The Act provides a cause of action for a trademark owner against a person who "has a bad faith intent to profit from [the owner's] mark" and who "registers, traffics in, or uses a domain name" that is identical or confusingly similar to the owner's distinctive mark or that is identical, confusingly similar to or dilutive of the owner's famous mark. To prevail on a claim for cybersquatting, a plaintiff must establish: 1) the distinctiveness of its mark; 2) confusing similarity between the defendant's domain name and the plaintiff's mark; and 3) bad faith registration of the domain name. *Ohio Sav. Bank v. Kempa*, 2008 WL 276045 (M.D. Fla. 2008) citing 15 U.S.C. §1125(d)(1)(A); *Shields v. Zuccarini,* 254 F.3d 476, 482 (3d Cir. 2001). Because I find that SNR first used the term "cam guys," Z Productions cannot establish the elements of a cause of action for cybersquatting and I recommend SNR's motion for summary

judgment be granted.

### 6. *Counterclaim I- cancellation of mark*

SNR also seeks summary judgment on its counterclaims. By its first counterclaim, SNR alleges that Z Productions' registration must be cancelled because Z Productions obtained the registration through fraud, or alternatively because the phrase "the cam guys" is merely a descriptive term that is widely used in the internet entertainment industry not subject to trademark protection.

### a. *registration through fraud*

"Purposely failing to disclose other users' rights to use the same or similar marks may qualify as a material omission justifying cancellation of a trademark." *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.,* 522 F.3d 1200, 1210 (11th Cir. 2008). However, a party seeking cancellation of a trademark registration for fraudulent procurement "bears a heavy burden" as the applicant's subjective belief is at issue. *Pandora Jewelers 1995 v. Pandora Jewelry, LLC,* 2011 WL 2174012, *14 (S.D. Fla. June 2, 2011) citing *In re Bose Corp.,* 580 F.3d 1240, 1243 (Fed. Cir. 2009). A trademark is fraudulently obtained under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the USPTO. *Id.* Subjective intent to deceive, however difficult it may be to prove, is an indispensable element of the analysis. *Id.* Under 15 U.S.C. § 1120, the application for use of a trademark must contain a verified statement regarding the applicant's knowledge or belief regarding the accuracy of the application and the existence of any other user's right to the same or a similar mark. It is established that "the oath in an application for registration must be truthful." *Pandora,* at *13 citing *Rosso & Mastracco, Inc. v. Giant Food Inc.,* 720 F.2d 1263

(Fed.Cir. 1983). The oath, however, does not require an applicant to disclose those all other persons who may be using the mark; it only requires an applicant to disclose all persons who the applicant believes possesses the legal right to use the mark. *Pandora,* at *13 (citations omitted); 2 McCarthy on Trademarks §31:76 ("The signor of an application oath should not be put in the position of a fortune teller as to what the courts will hold in the future as to the trademark rights of others."). Although SNR maintains that Z Productions should have known of its use of the term "cam guys" on guyswithcams.com from 2002-2005, SNR has not provided sufficient facts to show that Z Productions made a false oath to the USPTO or otherwise obtained the registration through fraud. Hence, I recommend summary judgment on the theory that Z Productions procured the trademark registration through fraud be denied.

*b. registration should not have been issued*

SNR also maintains that the mark should be cancelled simply because it first used the mark and because "cam guys" is merely a descriptive or generic term that is widely used in the internet entertainment industry. Pursuant to §37 of the Lanham Act, courts have concurrent power with the USPTO to conduct cancellation proceedings. A litigant in court who seeks cancellation has the burden of overcoming the evidentiary effect of a federal registration. 5 McCarthy §30:109. In order to cancel a mark, a plaintiff must prove: 1) standing to petition for cancellation because it is likely to be damaged; and 2) that there are valid grounds for discontinuing registration. *Coach Restaurant, Inc. v. Coach and Six Restaurants, Inc.,* 934 F.2d 1551, 1557 (11th Cir. 1991). Because the mark at issue has been on the federal Principal Register in Z Production's name for less than five years, the mark may be cancelled upon proof by SNR that the registration should have been barred in the first instance under the Lanham Act.

*Coach, supra,* at 1558. In determining standing, the issue is not necessarily whether the party seeking cancellation is entitled to registration or owns the mark, but rather whether the presumptions flowing from the registration are damaging to the party's legal and continuous use of the term. 3 McCarthy §20:46. I find that SNR has standing to petition for cancellation. *See Coach, supra,* at 1557 (finding petitioner had standing because it claimed to have prior rights in the mark and registration of same mark could give registrant an incontestable right to own and exclusively use the mark).

Next, I must determine whether there are valid grounds for cancelling Z Productions' mark. The mark may be cancelled if SNR can prove that the registration should have been barred in the first instance under the Lanham Act § 2. Cancellation of the registration is appropriate if it is established either that as of the time of registration, the registered term was merely descriptive and lacked secondary meaning, or that as of the time of the decision in the cancellation proceeding the mark is merely descriptive and lacks secondary meaning. 3 McCarthy §20:54.

> The distinctiveness of a mark refers to how easily customers identify [a] mark with represented services. There are four categories of distinctiveness listed in ascending order of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary or fanciful. The demarcation between each category is more blurred than it is definite. Term which suggests the basic nature of the service is generic and is typically incapable of achieving service mark protection because it has no distinctiveness. A descriptive term merely identifies a characteristic or quality of a service. Because a descriptive service mark is not inherently distinctive, it may be protected only if it acquires a secondary meaning. A suggestive term suggests the characteristics of the service "and requires an effort of the imagination by the consumer in order to be understood as descriptive." Because a suggestive service mark is inherently distinctive, no proof of secondary meaning is required for it to be protectable. An arbitrary or fanciful service mark is also inherently distinctive because the term bears no relationship to the service. Thus, such marks are protectable without proof of secondary meaning.

*Coach House, supra,* 934 F.2d at 1560 (citations omitted). "Secondary meaning is the

15

connection in the consumer's mind between the mark and the provider of the service. In the absence of consumer survey evidence, four factors can be considered in determining whether a particular mark has acquired a secondary meaning." The four factors are: 1) the length and manner of its use; 2) the nature and extent of advertising and promotion; 3) the efforts made to promote a conscious connection in the public's mind between the party's name and the party's business; and 4) the extent to which the public actually identifies the name with the party's service. *Coach, supra,* at 1560.

Upon consideration, I find that the term "cam guys" is descriptive, and that there is no evidence of record that it has acquired secondary meaning.[7] Hence, cancellation is appropriate. *See* 3 McCarthy §20:54 citing *Neapco, Inc. v. Dana Corp.,* 12 U.S.P.Q. 2d 1746 (Trademark Trial and Appeal Board Aug. 30, 1989) (stating summary judgment proper on the issue of cancellation when it is established that as of the time of registration, the registered mark was merely descriptive and lacked secondary meaning, or that as of the time of cancellation proceedings the mark is merely descriptive and lacks secondary meaning).

### 7. *Counterclaim II- Declaratory Judgment Action*

SNR seeks entry of an order declaring that it has the right to use the term "cam guys" and that its use of the term "cam guys" does not infringe on Z Productions mark. For the reasons set

---

[7] Z Productions indicates in its response to the motion for summary judgment that it "is not aware of any consumer studies" and its discussion of its advertising and promotion efforts do not establish secondary meaning. *See* doc. 39, pp. 10-11. Notwithstanding SNR's motion to strike the affidavit of Christopher Wescott (doc. 43), I have considered the affidavit. The affidavit sets forth amounts Z Productions has spent on advertising and promotions as "The Cam Guys," and its presence on the world wide web. *See* Wescott affidavit, doc. 36-1. After considering the record evidence, I find that Z Productions has not met its burden of proving secondary meaning.

out above, I recommend entry of summary judgment in favor of SNR with regard to counterclaim II.

### 8. Counterclaims III and IV- tortious interference

SNR also seeks entry of summary judgment on its two claims of tortious interference with business relationships with its web hosts, Reality Check and Rackspace. Specifically, Z Productions requested that Reality Check and Rackspace stop hosting for camguys.net, camguys.tv, and camguys.info because the domain names were too similar to Z Productions' mark and domain name.

To prevail on a claim for tortious interference, a plaintiff must prove: 1) the existence of a business relationship that affords the plaintiff legal rights; 2) knowledge of the relationship by the defendant; 3) an intentional and unjustified interference with the relationship by the defendant; and 4) damage to the plaintiff resulting from the breach of that relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So. 2d 812, 814 (Fla. 1995). To satisfy the third element, a showing of malice or ill will is needed. *IBP, Inc. v. Hardy Enterprises, Inc.,* 267 F.Supp. 2d 1148, 1164 (N.D. Fla. 2002) citing *Rockledge Mall Assoc. Ltd v. Custom Fences of South Brevard, Inc.,* 779 So. 2d 554, 557 (Fla. 5th DCA 2001). As Z Productions indicates, the sole relevant issue here is whether its conduct was unjustified. Z Productions maintains that its conduct was in fact justified, as it requested only that SNR remove its one "infringing domain," camguys.net, of the 50-60 domains SNR operates, because it believed that SNR was infringing on its registered mark.

Of course, a trademark owner has the right to protect its mark against infringement. The trademark holder's right to warn others of infringement suits is not dependent on the validity of

the trademark so long as the holder believes in good faith that his claims are valid. *Daesang Corp. v. Rhee Bros. Inc.,* 2005 WL 1163142 (D. Md. 2005) citing *Spangler Candy Co. v. Crystal Pure Candy Co.,* 235 F.Supp. 18 (N.D. Ill. 1964). As a result numerous courts have routinely rejected tortious interference and unfair competition claims based on good faith efforts to enforce intellectual property rights. *Id.* citing *Kemp v. Tyson Foods, Inc.*, 2001 WL 391552, *7 (D. Minn. 2001) (granting summary judgment for defendant on plaintiff's action for tortious interference because no evidence defendant mark holder acted in bad faith in its attempts to protect its mark); *American Broadcasting Co. v. Maljack Productions, Inc.,* 34 F.Supp. 2d 665, 673-76 (N.D.Ill. 1998) (denying defendant's motion for summary judgment and granting plaintiff's motion for summary judgment where plaintiff believed in good faith that it was defending its mark against infringement when it sent cease and desist letters to third parties contractually related to defendant, and finding that defendant had not met its burden of showing plaintiff's conduct was either unjustified or malicious); *Heinz v. Frank Lloyd Write Foundation,* 762 F.Supp. 804, 807-08 (N.D. Ill. 1991) (recognizing that trademark owner has right to warn others of infringement suits and that right does not depend on the validity of the trademark so long as the trademark holder believes that its trademark claims are valid and finding no evidence of interference with contractual relations where defendant's letters to alleged infringer's customers were not in good faith). I find that SNR has not established that Z Productions doubted the validity of its trademark at the time it "interfered" with its web hosts, Reality Check and Rackspace, or that Z Productions' acts were unjustified. Instead, it seems that the evidence shows Z Productions acted to protect its mark. Accordingly, I find that SNR's motion for summary judgment on the tortious interference claims should be denied.

*D. Conclusion*

For the foregoing reasons, I recommend that

1. SNR's motion for summary judgment (doc. 33) be GRANTED as to Z Productions' counts I (unfair competition under 15 U.S.C.§ 1125(a)), II (dilution under Fla. Stat. § 495.151), III (unfair competition under Fla. Stat. §501.291 *et seq.*, IV (unfair competition under Florida common law), and VI (cybersquatting under 15 U.S.C. § 1125(a)) and as to counterclaims I (cancellation) and II (declaratory relief), and be DENIED as to SNR's counterclaims III and IV (tortious interference).

IT IS SO REPORTED at Tampa, Florida, on August 18, 2011.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).